Belknap
No. 92-237

### MARGARET T. GEPHART

v.

### THOMAS W. AND SALLY M. DAIGNEAULT

April 28, 1993

*Nighswander, Martin & Mitchell, P.A.*, of Laconia (*Mitchell B. Jean* on the brief and orally), for the plaintiff.

*Law Offices of Kevin F. Sullivan, P.A.*, of Meredith (*Kevin F. Sullivan* on the brief and orally), for the defendants.

JOHNSON, J.   The plaintiff, Margaret T. Gephart, appeals the decision of the Superior Court (*McHugh*, J.) denying her request for an injunction to enforce as an equitable servitude a restrictive covenant relating to the subdivision of the defendants' lakefront property. The defendants, Thomas and Sally Daigneault, cross-appeal, contending that the Superior Court (*O'Neil*, J.) erred in denying their motion to dismiss Gephart's case on the basis of collateral estoppel. We reverse the trial court's denial of Gephart's request for an injunction and affirm its ruling that collateral estoppel did not bar the action.

This case hinges upon the interpretation of three deeds involving the conveyance of lakefront property on Squam Lake: the Mead-Gephart, the Gephart-Reardon, and the Reardon-Daigneault deeds. The Mead-Gephart deed memorialized the transfer of a large tract of land known as Owl's Head from Cary H. Mead to F. Thomas Gephart and Sarah Lou Gephart, Margaret Gephart's parents. It contains the following relevant provisions:

"This conveyance is made subject to the following restrictions *which shall run with the land and which shall be binding upon the grantees, their heirs and assigns,* such restrictions to continue in full force and effect until January 1, 1999.

. . . .

Said premises shall not be subdivided into lots of less than ten (10) acres each, except that lots which run to the shore may be less than ten (10) acres but shall have not less than six hundred (600') feet of frontage on the shore of the lake *except with written approval of the grantor.*

. . . .

The word grantor as herein used shall refer to Cary H. Mead or such other person or persons as may hereafter be the owner of property in Center Harbor known as the Mead Farm, now owned and occupied by Cary H. Mead."

(Emphasis added.) Following her husband's death, Sarah Lou Gephart subdivided Owl's Head into several lots in accordance with the Mead-Gephart deed. She conveyed one of them to Elizabeth Graham Reardon and Thomas Michael Reardon; this lot has approximately six hundred feet of lake frontage. The Gephart-Reardon deed contains these important provisions:

"SUBJECT TO certain restrictions contained in said deed from Mead to F. Thomas Gephart and Sarah Lou Gephart as modified by an agreement [in] . . . 1965 and recorded as follows:

This conveyance is made subject to the following restrictions *which shall run with the land and which shall be binding upon the grantees, their heirs and assigns,* such restrictions to continue in full force and effect until January 1, 1999.

. . . .

Said premises shall not be subdivided into lots of less than ten (10) acres each, except that *lots which run to the shore may be less than ten (10) acres but shall have not less than six hundred (600) feet of frontage on the shore of the lake except with written approval of the grantor.*

. . . .

'Wherever it is provided in this deed that no waiver or modification of certain restrictions shall be made without

written approval of the "grantor[,"] the "grantor" shall mean Cary H. Mead, or such of her heirs at law or devisees as shall at that time be the owner or owners of all or any portion of property in Center Harbor known as "The Mead Farm" now owned and occupied by Cary H. Mead, and shall also refer to any corporation or association in which she, or any of her heirs, or devisees, shall be owners of stock or other interest, provided that such corporation or association shall own all or a portion of said "Mead Farm[."]'

Whereas, the written approval of the grantor in said deed from Cary H. Mead, as modified by said above referred agreement, is required in order to validate any variance from the restrictions therein set forth, by the acceptance hereof, *the grantees herein agree that the word 'grantor' as used in said deed from Cary H. Mead in reference to said restrictions*, and as used in said agreement dated 23 March 1965 and recorded in said registry at Book 452, Page 52, *shall include said Sarah Lou Gephart, or, in the event she is deceased, any adult issue* or guardian of any minor issue of hers, *as long as the grantor or any of her issue own land shown on said plan*. The guardian of any minor issue may execute written approval on behalf of such issue without license from any court."

(Emphasis added.) The Reardons later conveyed their Owl's Head lot to the Daigneaults. The Reardon-Daigneault deed contains all of the provisions quoted from the Gephart-Reardon deed. Meanwhile, Sarah Lou Gephart died, leaving several acres of Owl's Head land to her children, Margaret Gephart and John W. Gephart, who still own the land as cotenants.

In February 1991, the Daigneaults obtained approval from the Center Harbor planning board to subdivide their Owl's Head lot into two parcels, each with approximately three hundred feet of lake frontage. The record indicates that the Daigneaults neither sought nor obtained written approval from Margaret Gephart or her brother, John Gephart, for this subdivision. John Gephart then sued the Daigneaults for failing to abide by the restrictive covenant quoted above, relating to subdivision of lakefront property, and petitioned the trial court for an injunction to rescind the subdivision approved by the planning board. The Superior Court (*Barry*, J.) dismissed the petition, ruling that John Gephart was not a proper party to enforce the restrictive covenant. This court dismissed John Gephart's appeal on the grounds that it was untimely filed.

In February 1992, Margaret Gephart brought an action against the Daigneaults identical to the one her brother had brought. The Daigneaults moved to dismiss on the basis of collateral estoppel, but the trial court denied the motion, finding that the Daigneaults failed to prove that Margaret Gephart and her brother were parties in privity. The court nonetheless dismissed Margaret Gephart's suit, stating that "this court agrees with and hereby adopts the order of the court in John W. Gephart v. Thomas and Sally Daigneault." By adopting the previous order, the trial court ruled that Margaret Gephart was not a proper party to enforce the restrictive covenant.

## I. Enforceability of the Restrictive Covenant

We first address the question whether the trial court correctly concluded that Margaret Gephart could not enforce the restrictive covenant. The trial court determined that the restrictive covenant appearing in the Gephart-Reardon deed was in fact an equitable servitude, but that Margaret Gephart could not enforce it. The court based its decision in part on the language of the last paragraph of the Gephart-Reardon deed quoted above, redefining the word "grantor" to include Sarah Lou Gephart, or, if dead, her adult issue so long as they still owned land on Owl's Head. The parties do not dispute that Margaret Gephart meets this new definition of "grantor," or that the deed names the "grantor" as the person from whom written approval must be obtained before lakefront property such as the Daigneaults' may be subdivided. As the trial court and the Daigneaults point out, however, the paragraph redefining "grantor" states that "the *grantees* herein agree" to abide by this new definition; it does not state that "the grantees, *their heirs and assigns* agree" to it. Because these "words of inheritance" were omitted, the trial court ruled that the parties intended only the *Reardons*—the immediate grantees of the Gephart-Reardon deed—to be bound by the redefinition of the word "grantor," and not the Daigneaults. Accordingly, the court ruled Margaret Gephart powerless to enforce the covenant.

■ We reverse. The provision redefining "grantor" to include Margaret Gephart appeared not just in the Gephart-Reardon deed, but in the Reardon-Daigneault deed. The immediate "grantees" of the Reardon-Daigneault deed are, of course, the Daigneaults, and thus by the Daigneaults' own logic, they are bound by the redefinition of "grantor" just as the Reardons were bound. Regardless of whether the covenant runs with the land as an equitable servitude, the Daigneaults themselves specifically agreed to the redefinition

and accordingly promised that they would not subdivide their lot without the written permission of Margaret Gephart. As a third-party beneficiary of this promise, Margaret Gephart is entitled to enforce it. *See Tamposi Associates, Inc. v. Star Market Co.*, 119 N.H. 630, 633, 406 A.2d 132, 134 (1979); *see also* RESTATEMENT OF PROPERTY § 528 comment b at 3186 (1944); RESTATEMENT OF PROPERTY (SERVITUDES) § 2.6 reporter's note at 75 (Tent. Draft No. 1, 1989).

The Daigneaults argue that the application of certain provisions of the Gephart-Reardon deed relating to a right of first refusal has rendered the restrictive covenant unenforceable. These provisions state that if one or more listed events take place, "the grantees shall have the absolute right thereafter to convey or otherwise deal with said premises free of any restrictions contained herein." The Daigneaults contend that one of the listed events did take place and that the grantees may therefore ignore *all* of the restrictions contained in the deed, not just those relating to the right of first refusal. They also maintain that their reading of the deed is supported by our supposed policy of strictly construing restrictive covenants against the grantor.

■■ We decline to adopt this argument for two reasons. First, we note that "we have rejected the traditional policy of strictly construing [restrictive covenants]," *Heston v. Ousler*, 119 N.H. 58, 63, 398 A.2d 536, 539 (1979); *see also Joslin v. Pine River Dev. Corp.*, 116 N.H. 814, 817, 367 A.2d 599, 601 (1976), and have observed that "[t]hey are particularly useful devices in planning the development of lake communities," *Joslin supra*. Second, a reading of the entire Gephart-Reardon deed, based on the principles of construction just stated, convinces this court that the privilege to convey free from restrictions applies only to the restrictions imposed by the right of first refusal. This interpretation is bolstered by the fact that the provisions for first refusal and right to convey free from restrictions do not appear in the deed to the Daigneaults. Presumably, the condition to so convey has been met, as asserted by the Daigneaults, and the right of first refusal, being terminated, is not meant to be included in this deed. The Daigneault deed, however, does include the basic restrictions on use and includes the plaintiff within the class empowered to consent to violation.

## II. Application of Collateral Estoppel

We next address the question whether the trial court should have dismissed Margaret Gephart's action on the basis of collateral estop-

pel. In *Daigle v. City of Portsmouth*, 129 N.H 561, 570, 534 A.2d 689, 693 (1987), we stated:

> "At its core, the doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action. Three básic conditions must, then, be satisfied before collateral estoppel will arise: the issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared as a party in the first action, or have been in privity with someone who did so. These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair prior opportunity to litigate the issue or fact in question."

(Citations omitted.) Margaret Gephart does not dispute that the issue the Daigneaults wish to make subject to estoppel—the interpretation of the restrictive covenant—is identical to the issue decided in her brother's case or that the first action resolved the issue finally on the merits; we therefore focus on the third element of collateral estoppel, privity of the parties.

▮▮  The Daigneaults argue preliminarily that Margaret Gephart bore the burden of proving that she and her brother were not in privity during the earlier litigation. Accordingly, the Daigneaults argue, the trial court should not have held their failure of proof against them. We disagree. Although there appears to be little case law on the precise issue, courts that have addressed the subject uniformly hold that the party asserting the defense of collateral estoppel bears the burden of proving privity. *Church of Scientology of California v. Linberg*, 529 F. Supp. 945, 962 (C.D. Cal. 1981); *Tarutis v. Comm'r of Revenue*, Nos. 4241, 4276, 1987 WL 10247, at *5 (Minn. T.C. Mar. 20, 1987), *aff'd*, 414 N.W.2d 412 (Minn. 1987); *State v. Lange*, 497 N.W.2d 83, 85, (N.D. 1993); *cf. Strobel v. Strobel*, 123 N.H. 363, 365–66, 461 A.2d 558, 559 (1983) (party asserting claim preclusion bears burden of proving identity of issues and finality of determination); 46 AM. JUR. 2D *Judgments* §§ 598, 603, at 756, 760 (1969) (party asserting claim preclusion bears burden of proving privity); 50 C.J.S. *Judgments* § 844, at 418 (1947) (same). Moreover, the defense of collateral estoppel is an affirmative one. *See* F. JAMES, CIVIL PROCEDURE § 4.8, at 144–45 (1965). As such, the party asserting it bears

the burden of proving all of its elements. *See* 31A C.J.S. *Evidence* § 106, at 183 (1964). Privity being one of those elements, *see Daigle*, 129 N.H. at 570, 534 A.2d at 693, we hold that the Daigneaults, the parties asserting the defense of collateral estoppel, bore the burden of proving that Margaret Gephart was in privity with her brother.

■ We now address whether the trial court erred in finding that the Daigneaults failed to meet their burden of proof on the privity issue. As the Daigneaults concede, it is generally held that one asserting the defense of collateral estoppel may not prove the privity element merely by showing that the party to be estopped and the original party in question were co-owners of the subject property; rather, some "further relationship" must be shown. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 54, at 65 (1980). The Daigneaults nevertheless urge us to hold that the requirements for proving collateral estoppel should be relaxed here because the issue being relitigated is a legal, and not a factual one. We need not decide whether these requirements should be relaxed for purely legal issues, however, because the interpretation of restrictive covenants requires a finding of intent, *see Traficante v. Pope*, 115 N.H. 356, 359, 341 A.2d 782, 784 (1975), and as such involves mixed questions of fact and law, "a common subject of collateral estoppel," *Caouette v. Town of New Ipswich*, 125 N.H. 547, 555, 484 A.2d 1106, 1112 (1984). We therefore hold that the trial court correctly required the Daigneaults to prove some "further relationship," RESTATEMENT (SECOND) OF JUDGMENTS § 54, at 65, such that "the interests of [Margaret Gephart] were in fact represented and protected in the [prior] litigation." *Daigle*, 129 N.H. at 571, 534 A.2d at 694 (quotation omitted).

■ The Daigneaults failed to meet this burden. The trial court specifically found that the Daigneaults presented no evidence of such a further relationship and no evidence that Margaret Gephart "authorized, controlled or participated in the previous action." Accordingly, we find no error in the trial court's decision not to apply the doctrine of collateral estoppel here.

■ The Daigneaults also argue that relitigation of the restrictive covenants issue violated their right to prompt resolution of the dispute as guaranteed by part I, article 14 of the New Hampshire Constitution. This argument, however, was not raised in the Daigneault's notice of cross-appeal and is therefore not properly before us. *State v. Peterson*, 135 N.H. 713, 714–15, 609 A.2d 749, 750–51 (1992). Even

174

if it were, we see nothing relevant in the constitutional provision that is not already safeguarded by the doctrine of collateral estoppel.

*Affirmed in part;*
*reversed in part.*

BATCHELDER, J., did not sit; the others concurred.