Original
No. 97-840

Merrimack
No. 98-455

### Petition of Steven Rattee

### (New Hampshire Agricultural Lands Preservation Committee)

### The State of New Hampshire

#### v.

### Steven Rattee

### Steven Rattee

#### v.

### Commissioner, New Hampshire Department of Agriculture, Markets and Food & a.

October 31, 2000

*Richard R. Peppe*, of Pembroke, and *Elizabeth Cazden*, of Manchester (*Mr. Peppe* and *Ms. Cazden* on the brief, and *Mr. Peppe* orally), for Steven Rattee.

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State of New Hampshire.

*Paul F. Cavanaugh*, city solicitor, of Concord, for defendant City of Concord, filed no brief.

BROCK, C.J. This is a consolidated appeal from decisions of the New Hampshire Agricultural Lands Preservation Committee (ALPC) and the Superior Court (*Brennan*, J.) denying the request of Steven Rattee to construct a home on land subject to an agricultural preservation restriction (APR). We affirm in part and vacate in part.

The following facts were either found by the trial court or the ALPC or adduced at trial or the ALPC hearing. In May 1996, Rattee purchased at a foreclosure sale 185 acres of land on the east and west sides of Mountain Road in Concord for $216,000 and approximately $28,000 in back taxes. The deed granted to him stated that the land was subject to the terms of an APR and stated where the APR was recorded in the Merrimack County Registry of Deeds. In 1982, Rattee's predecessor in title, Horace Blood, had granted by deed the APR on approximately 103 acres of the property to the State of New Hampshire (grantee), acting through the ALPC and the commissioner of the department of agriculture (commissioner).

*See generally* RSA ch. 36-D (Supp. 1981) (current version at RSA 432:18 to :31-a (1991 & Supp. 1999)). The State paid approximately $406,000 to acquire the APR.

The APR states, in pertinent part:

> The Grantor, his heirs, . . . successors and assigns, . . . covenant and agree that they are restrained from constructing on, . . . or otherwise improving the Site for uses that result in rendering the Site no longer suitable for agricultural use . . . . Such restraint . . . shall include prohibition of:
>
> > 1. Construction or placement of building or structures except those to be used for agricultural purposes or for dwellings to be used for family living by the landowner, his immediate family or employees. Construction or placement of (a) dwellings to be used for family living . . . shall be subject to the prior approval of the Grantee. Approval for such construction or placement shall be granted only when it will not defeat or derogate from the intent of this restriction. Any building or structure and the land upon which it is situated shall not be sold or otherwise severed from the Site unless the Grantee releases such dwelling, permanent structure or land from the restriction pursuant to RSA 36-D:7 (Supp.) . . . .
> >
> > . . . .
>
> The foregoing restriction is intended to conform to and have the benefit of RSA 36-D (Supp.) and RSA 477:45-47 (Supp.).

In 1987, the prior owners constructed on land subject to the APR a small house that remains. Also included in the 185 acres purchased by the petitioner is an adjacent 3.3 acre "farmstead site," which is exempt from the APR and upon which stood a house. According to Rattee, in 1996 he arranged for that house to be burned down as a fire department exercise because it was in very poor condition.

In the fall of 1996, Rattee excavated a field on land subject to the APR to construct a new 5500 square foot home and a 1500 foot driveway that would destroy two acres. He applied for a building permit from the City of Concord, but did not seek building or placement approval from the ALPC. Shortly thereafter, the State advised Rattee that he was in violation of the APR. Rattee asserted that the APR did not apply because the house was going to be his

home, and thus was subject to an exception for "dwellings used for family living by the landowner." RSA 36-D:1, II (current version at RSA 432:18, II).

In October and November 1996, Rattee and the State filed cross petitions for equitable relief in superior court. Rattee sought declaratory judgment that the APR does not require the commissioner's consent to construct a home on the site and that RSA chapter 36-D did not authorize the commissioner to require prior approval for any matters concerning the construction of a home for the landowner. He also asked the court to enjoin the commissioner from taking any act to prevent the issuance of a building permit to him. The State requested a temporary restraining order halting construction of the house and further proceedings to determine whether the APR allowed Rattee to construct a home without the prior approval of the ALPC. On November 19, 1996, the Superior Court (*McGuire*, J.) denied Rattee's request and issued an injunction prohibiting Rattee from performing further work on the site until he received approval from the ALPC or further order of the court.

In March 1997, Rattee filed an application with the ALPC for approval of the project. After a hearing, the ALPC denied the application. In its decision, the ALPC reasoned that "[g]iven the existing residence on the Site and the availability of adjacent, commonly owned land traditionally used for owner-operated housing, any loss of productive soils must be viewed as an unreasonable diminution of the Site's agricultural potential." It also stated that the APR prohibits subdivision of the site and that the site may only be sold as a whole. Rattee filed a petition for a writ of certiorari challenging that decision, with a specific request that we defer action until the superior court reached a final decision on the equity petitions.

On March 6, 1998, the Superior Court (*Brennan*, J.) made the temporary injunction permanent, contingent upon our ruling that Rattee is required to obtain the prior approval of the ALPC for the construction or placement of buildings for family living. The trial court concluded that the APR's exception for construction or placement of a dwelling for "family living" is subject to the prior approval of the ALPC. The court also concluded that the easterly and westerly sections of the land constitute a single site and that the APR prohibits the petitioner from subdividing or severing them from the site without obtaining a release. Rattee appealed the trial court's order, and we consolidated the petition for writ of certiorari and the appeal from the superior court.

On appeal, Rattee argues that: (1) the State, acting through the ALPC, lacked authority to acquire the right to require prior approval for the construction of owner residences on APR sites; (2) the APR did not effectively convey to the State the right to determine the location of owner residences on the site; (3) the ALPC acted unreasonably in disapproving Rattee's application; and (4) the ALPC and the trial court improperly ruled that sections of the APR site on either side of Mountain Road cannot be sold separately without the ALPC's approval.

 With respect to the first argument, we do not agree that the State lacked authority to purchase or acquire more rights than are contained in the statutory definition of an APR, specifically the right to regulate construction of owner residences on APR sites. The provision requiring prior approval for construction or placement of owner residences was part of a voluntary conveyance of property rights to the State. Cf. Gephart v. Daigneault, 137 N.H. 166, 170-71, 623 A.2d 1349, 1352 (1993) (provision of restrictive covenant requiring written approval of grantor for waiver or modification of restrictions enforceable because grantees agreed to it). Even if we assume that the prior approval provision exceeds the authority given to the State by RSA chapter 36-D, no rule of law bars the State from purchasing such a right. See Bennett v. Comm'r of Food & Agriculture, 576 N.E.2d 1365, 1367 (Mass. 1991).

We also reject the argument that the APR did not convey to the State the right to determine the location of owner housing on the site. Rattee contends that the statement in the APR that it "is intended to conform to and have the benefit of RSA 36-D" restricts the rights conveyed to those enumerated in RSA chapter 36-D. Therefore, while the APR language requiring prior approval may be clear, Rattee argues that it is rendered ambiguous by the statement that the APR is intended to conform to RSA chapter 36-D, which does not have a prior approval provision. The State counters that the prior approval provision is a "necessary, appropriate and reasonable means for accomplishing the public policy objective of preserving good quality agricultural land for future agricultural production."

"[T]he determination of a deed's intended meaning and its legal effect is ultimately a question of law for this court . . . ." Lussier v. N.E. Power Co., 133 N.H. 753, 756-57, 584 A.2d 179, 181 (1990). "If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence." Flanagan v. Prudhomme, 138 N.H. 561, 573, 644 A.2d 51, 60 (1994).

■ The stated purpose of RSA chapter 36-D is to "recognize the importance of preserving the limited land suitable for agricultural production, to safeguard the public health and welfare by encouraging the maximum use of food and fiber producing capabilities of the state's agriculturally suitable land and to ensure the protection of agricultural land facing conversion to non-agricultural uses." Laws 1979, 301:1. Thus, while the APR statute and deed both reserve the right to construct "dwellings to be used for family living," requiring prior approval for such construction is consistent with the statutory purpose. Prior approval ensures that family dwellings will be constructed in a manner that minimizes their impact on agricultural production and prevents potential abuse of the family dwelling exception. Therefore, we conclude that the prior approval provision in the APR conforms to, and indeed strengthens, RSA chapter 36-D. Cf. Bennett, 576 N.E.2d at 1368 (APR prior approval provision enforceable, even if the condition of approval did not fall within the statutory definition of APR, because it was consistent with the public policy expressed in the Massachusetts APR statute).

We disagree with Rattee that this conclusion is unreasonable due to the statutory language preserving for the landowner all customary rights of ownership, including the right to carry out all regular agricultural practices not prohibited by the statutory definition of an APR. See RSA 36-D:7 (current version at RSA 432:24, I). We interpret this language in accordance with the statutory purpose of RSA chapter 36-D. While the statute may reserve certain rights for the landowner, it is reasonable for the APR to include a prior approval provision to ensure that the exercise of the family dwelling exception does not defeat the statutory purpose of "preserving the limited land suitable for agricultural production." Laws 1979, 301:1. For the same reason, we disagree that the statement that the APR "is intended to conform to and have the benefit of RSA 36-D" restricts the rights conveyed in the APR to those enumerated in RSA chapter 36-D.

Because we conclude that the prior approval provision conforms to RSA chapter 36-D, we reject the argument that the APR is ambiguous. Accordingly, we interpret the intended meaning of the prior approval provision from the language of the deed and need not consider extrinsic evidence. See Flanagan, 138 N.H. at 573, 644 A.2d at 60.

Rattee next argues that the ALPC acted unreasonably in disapproving his application. "We review the [ALPC's] decision to determine whether [it] acted illegally with respect to jurisdiction,

authority or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Hoyt*, 143 N.H. 533, 534, 727 A.2d 1001, 1002 (1999) (quotation and brackets omitted). We conclude that the ALPC's decision was reasonable.

As an initial matter, Rattee argues that the ALPC lacked authority to consider and hold hearings on his application. We disagree. The terms of the APR provided that the construction or placement of dwellings for family living shall be "subject to the prior approval of the [State]," acting through the ALPC and the commissioner. RSA 36-D:8, I, provides that "[t]he restrictions arising from the acquisition of the development rights may be enforced by injunction or other proceeding." Therefore, RSA 36-D:8, I, authorizes the ALPC to enforce the prior approval provision by requiring and considering Rattee's application.

We also reject Rattee's argument that the ALPC could not legitimately consider his application because it lacked clear procedural rules. RSA 541-A:16 (1997) requires that an agency "[a]dopt rules of practice setting forth the nature and requirement of all formal and informal procedures available." The State does not dispute that the ALPC has not adopted rules governing the application process. The record reflects, however, that consistent with the terms of the APR, the petitioner filed the application requesting approval to build and that this was the first administrative hearing of this nature held before the ALPC. In reviewing the application, the ALPC properly considered the criteria set forth in its statutory mandate. *See* Laws 1979, ch. 301. Notwithstanding the lack of procedural rules, the ALPC's duty to protect the public's interest by monitoring and enforcing restrictions in APRs acquired by the State remained. *See* RSA 36-B:8, I; *cf. Smith v. N.H. Bd. of Psychologists*, 138 N.H. 548, 552-53, 645 A.2d 651, 653-54 (1994); RSA 541-A:31 (setting forth procedures for contested hearings). While we do not condone the lack of compliance with the administrative rulemaking process, we cannot conclude that the petitioner in this case was prejudiced.

Rattee also suggests that the ALPC erred in not following the procedures for a release of an APR outlined in RSA 36-D:7. This argument fails because Rattee did not request in his March 1997 application to the ALPC that the APR be released. Rather, he requested "formal approval to build a 'landowner's residence' within the bounds of the [APR]."

Rattee next argues that the ALPC "improperly blurred the roles of advocate, party, and judge" in violation of his right to a fair hearing under the State and Federal Constitutions. *See* U.S. CONST. amend. XIV; N.H. CONST. pt. I, arts. 15, 35. We address the petitioner's State constitutional claim first. *See State . v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). "Because we conclude that federal law is not more favorable to the petitioner, we make no separate federal analysis." *Appeal of Dell*, 140 N.H. 484, 492, 668 A.2d 1024, 1031 (1995) (quotation omitted); *see Withrow v. Larkin*, 421 U.S. 35, 47 (1974).

An impartial tribunal is essential to a fair hearing. *See Appeal of Dell*, 140 N.H. at 492, 668 A.2d at 1032. "Administrative officials that serve in an adjudicatory capacity are presumed to be of conscience and capable of reaching a just and fair result. The burden is upon the party alleging bias to present sufficient evidence to rebut this presumption." *Id.* (quotation omitted).

 Rattee argues that his hearing was unfair because the ALPC did not "insulate its hearing officer or decision-making panel from its advocacy position," and because its members "engaged in adversarial cross-examination of . . . Rattee and other witnesses, and repeatedly put in their own opinions on the details of managing a farm." It is clear, however, "that some combinations of the investigative, accusative, and adjudicative functions are constitutionally permissible." *Burhoe v. Whaland*, 116 N.H. 222, 223, 356 A.2d 658, 659 (1976). Furthermore, administrative officials may question witnesses, *see* 1 F. COOPER, STATE ADMINISTRATIVE LAW 336 (1965), and possess preconceived views on the legal and policy issues before them, *see Appeal of Seacoast Anti-Pollution League*, 125 N.H. 465, 472, 482 A.2d 509, 514 (1984). We conclude that Rattee

> failed to meet his burden to affirmatively establish that the [ALPC] . . . had a conflict of interest, entertained ill-will towards him, or unalterably prejudged the facts. A review of the record does not lead us to conclude that bias by any of the [ALPC] members violated the petitioner's right to due process.

*Appeal of Dell*, 140 N.H. at 497, 668 A.2d at 1034 (citations omitted).

 We also reject Rattee's argument that the ALPC acted arbitrarily and capriciously in treating his application "in a manner completely inconsistent with its earlier treatment of the same property and with its treatment of other identically protected properties." The ALPC's previous failure to enforce restrictions

does not constitute ratification of a policy of nonenforcement. *Cf. Alexander v. Town of Hampstead*, 129 N.H. 278, 283, 525 A.2d 276, 280 (1987). Thus, because Rattee has not shown that the ALPC acted with "conscious intentional discrimination," *id.*, we conclude that the ALPC properly enforced the APR in this case.

■ Rattee next argues that the ALPC's conclusion that "construction of a house would damage agricultural use of the land was unsupported by any evidence." We disagree. Because both the statute and the deed carve out of their prohibitions on construction an exception for "dwellings used for family living by the landowner," RSA 36-D:1, II, we agree with Rattee that the existence of the small house does not preclude him from constructing another residence. The APR provides, however, that the ALPC shall grant approval for construction "only when it will not defeat or derogate from the intent of [the] restriction." The statutory purpose of an APR is "to recognize the importance of preserving the limited land suitable for agricultural production . . . and to ensure the protection of agricultural land facing conversion to non-agricultural uses." Laws 1979, 301:1. In his application to the ALPC, Rattee proposed constructing a 5500 square foot home. The proposed home and accompanying 1500 foot driveway would remove two acres of productive soil from cultivation. Given the availability of the adjacent 3.3 acre farmstead site that is exempt from the APR, we agree with the ALPC that the proposed construction "is far from the least disruptive alternative available to . . . [Rattee]." Thus, we conclude that sufficient evidence in the record supports the ALPC's decision to deny this particular application, and that the decision is reasonable in light of the standard for approval stated in the APR. *See Petition of Hoyt*, 143 N.H. at 534, 727 A.2d at 1002. We also note that the ALPC's decision was "without prejudice . . . to [Rattee's] submission of a subsequent application containing a construction proposal which is consistent with the purpose of the [APR]."

■ Rattee next argues that the ALPC's decision was unreasonable because the ALPC improperly and without statutory authority considered several factors not relevant to its decision, including how much time the petitioner would devote to farming. Even if we assume that the ALPC improperly considered these factors, any error was harmless because Rattee did not meet his burden of showing that the alleged error resulted in material prejudice. *See Appeal of Chickering*, 141 N.H. 794, 796-97, 693 A.2d 1169, 1171 (1997). Accordingly, we affirm the decision and order of the ALPC and the decree of the superior court, except as provided hereafter.

We need not decide the fourth issue on appeal. Rattee argues that the ALPC and the trial court improperly ruled that sections of the APR site on either side of Mountain Road cannot be subdivided or sold separately without the ALPC's approval. In his brief, Rattee states that "the question of separate sale or subdivision of [his] land is not directly material to the central question in this case." He also notes that at trial the State argued that the issue was not before the trial court. Rattee argued to the trial court that the separate sale issue was significant because if he could sell the land on the west side of Mountain Road, which includes the existing small house, then the ALPC could not tell him that he could use that house instead of constructing a new one on the east side of Mountain Road. We interpret these statements to mean that the separate sale issue was relevant only if the existing house precludes the construction of an additional house. Because we conclude that it does not, the separate sale issue was not relevant and need not have been reached by the ALPC or the trial court. Accordingly, we vacate the decisions of the ALPC and the trial court to the extent they concluded that the land covered by the APR cannot be sold separately, subdivided, or otherwise severed without obtaining a release.

*Affirmed in part; vacated in part.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; HORTON and BRODERICK, JJ., concurred.