Merrimack
No. 2000-149

NEIL NEVINS *& a.*

v.

NEW HAMPSHIRE DEPARTMENT OF
RESOURCES AND ECONOMIC DEVELOPMENT *& a.*

Argued: November 14, 2001
Opinion Issued: March 11, 2002

*Baldwin, Callen, Hogan & Kidd, P.L.L.C.,* of Concord (*Grant Kidd* on the brief and orally), for the plaintiffs.

*Philip T. McLaughlin,* attorney general (*Douglas N. Jones,* assistant attorney general, on the brief, and *Michael K. Brown,* assistant attorney general, orally), for the State.

*Orr & Reno, P.A.,* of Concord (*Neil F. Castaldo* on the brief, and *Bradford W. Kuster* orally), for Appalachian Mountain Club, as *amicus curiae.*

DUGGAN, J. The plaintiffs appeal from an order of the Superior Court (*McGuire,* J.) granting summary judgment to the defendants, the New

Hampshire Department of Resources and Economic Development (DRED), the commissioner of DRED, and the administrator of the land management division. The court denied the plaintiffs' request to declare that the defendants acted illegally in permitting the erection of a 180-foot telecommunication tower on the summit of Mt. Kearsarge and refused to order removal of the tower. We affirm.

In 1949, the Society for the Protection of New Hampshire Forests deeded to the State of New Hampshire several hundred acres of land near the summit of Mt. Kearsarge. When the State acquired this parcel, a fire tower and a navigation beacon tower were located on the summit. After acquiring the land, the State installed a State police radio communication antenna. Thereafter, a number of public entities installed additional towers and communication facilities on the summit.

In 1964, the State adopted a statement of policy concerning the use of state land for radio and television antenna sites. The statement acknowledged the increasing need for antenna sites and the fact that all available sites may be needed to meet the demand for public installations. The stated objective of the policy was to protect the existing communications interest of the State and to provide for the future needs of agencies responsible for public safety and/or public service. The policy established a State Radio-Electronics Committee and set forth guidelines for considering applications. Although the policy limited new installations to public agencies, it noted that requests from private agencies would be considered if they provided a public service or a benefit to public safety.

In 1982, DRED adopted administrative rules relating to the installation of radio and television antenna sites located on state land. *See* N.H. ADMIN. RULES, Res-F ch. 800. These rules included many portions of DRED's 1964 policy statement such as the establishment of a State Radio-Electronics Committee, guidelines for application consideration and installation requirements. *See* N.H. ADMIN. RULES, Res-F 801.01 to 804. Like the policy, the rules explained that applications for leasing state lands to private agencies would be considered only where the installation would provide a measure of public safety or public service. *See* N.H. ADMIN. RULES, Res-F 801.1. Because these rules were not readopted, they eventually lapsed.

In 1989, DRED adopted a new policy pertaining to the erection of communication facilities on State-owned mountaintops. The policy noted that additional concerns had developed in the 1980s regarding communication facilities on State-owned summits. The concerns related to protecting the aesthetics and natural conditions of the State's high peaks and ridges, growing electronic interference and signal deterioration due to increased numbers of installations and the potential threat to public health

from intense signal emissions. The policy designated sixteen mountains, including Mt. Kearsarge, where development of communication facilities would be allowed. The policy also barred new private users from installing communication facilities on State-owned mountaintops.

In 1995, DRED revised its policy by increasing the number of mountains where the development of communication facilities is allowed to seventeen. The revised policy also allowed new private users to install communication facilities on State-owned mountaintops if the private user met certain requirements.

In 1996, the department of safety (DOS) notified DRED of its intention to develop and install a statewide radio system. DRED agreed to cooperate with DOS in implementing the new system, and the two agencies executed a Memorandum of Understanding in July 1997. As negotiations continued between the agencies, DRED received a proposal from U.S. Cellular to lease space on the summit of Mt. Kearsarge. In return for permission to locate cellular communication equipment on Mt. Kearsarge, U.S. Cellular agreed to construct a new tower according to DOS's specifications and to donate the tower to the State upon completion. Ultimately DRED and U.S. Cellular entered into a five-year lease involving the construction of a new 180-foot telecommunication tower and associated equipment building. The Governor and Council approved the lease and construction of the tower was completed during the fall of 1997.

In 1998, the plaintiffs, Neil Nevins and other individuals who own property facing Mt. Kearsarge and/or enjoy recreational interests in Mt. Kearsarge, petitioned the superior court for declaratory and injunctive relief alleging that: (1) DRED exceeded its statutory authority; and (2) DRED was required to adopt rules under RSA 227-G:4 (2000). Both the plaintiffs and the defendants sought summary judgment. The superior court granted the defendants' motion, ruling that DRED was "authorized by RSA 227-H:9 [2000] to contract to erect the tower on Mt. Kearsarge" and that because DRED acted "pursuant to specific statutory authority . . . a rule was not necessary." After the superior court denied the plaintiffs' motion for reconsideration, this appeal followed.

In reviewing a grant of summary judgment, we will affirm the judgment if the evidence reveals no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *See* RSA 491:8-a, III (1997). "As no material fact is in dispute on appeal, we need only determine whether the moving party was entitled to judgment as a matter of law." *N.E. Tel. & Tel. Co. v. City of Rochester*, 144 N.H. 118, 120 (1999) (quotation and brackets omitted).

The plaintiffs assert that RSA 227-G:4, I, requires DRED to formally adopt rules governing its management of mountaintop communication

facilities. RSA 227-G:4, I, provides that "[t]he commissioner [of DRED] shall adopt rules, under RSA 541-A relative to . . . [t]he management of reservations, pursuant to RSA 227-H." Although the granting of privileges and concessions is part of DRED's management of State reservations pursuant to RSA chapter 227-H (2000), the superior court determined that DRED is not required to promulgate rules because RSA 227-H:9 specifically authorizes the commissioner of DRED to make contracts for the leasing of privileges and concessions on State reservations.

In *Stuart v. State*, 134 N.H. 702, 705 (1991), we explained that promulgation of a rule pursuant to the APA rulemaking procedures is not necessary to carry out what a statute demands on its face. In *Smith v. New Hampshire Board of Psychologists*, 138 N.H. 548, 553 (1994), we reiterated this rule in determining that, despite the expiration of its rules, the board of examiners of psychologists retained authority to initiate disciplinary hearings against the plaintiffs because of its "clear statutory authority to initiate and conduct disciplinary proceedings."

██ ██ Subsequent cases have affirmed that "[p]romulgation of a rule pursuant to RSA chapter 541-A is not necessary to carry out what a statute authorizes on its face." *Petition of Smith*, 139 N.H. 299, 307 (1994); *see also Appeal of Morgan*, 144 N.H. 44, 51 (1999); *Petition of Rattee*, 145 N.H. 341, 347 (2000). *But cf. Appeal of Behavior Science Institute*, 121 N.H. 928, 934-35 (1981) (holding that agency should adopt rules and regulations to clarify the requirements of statute in light of provisions requiring adoption of rules and regulations). The plaintiffs contend that the superior court erred in applying the rule articulated in *Stuart* and later cases because in those cases, the statute either contained a clear mandate or was sufficiently detailed to effectuate its purpose. Because RSA 227-H:9 states only that DRED "may make contracts for the leasing of privileges and concessions," the plaintiffs contend that it neither contains a clear mandate nor is sufficiently detailed to effectuate its purpose and, therefore, DRED was required to promulgate rules prior to entering into a lease with U.S. Cellular. We agree that because RSA 227-H:9 is not sufficiently detailed to effectuate its purpose, DRED was required to promulgate rules. We hold, however, that despite its failure to promulgate rules, DRED's authority to make contracts for the leasing of privileges and concessions remained. *See Petition of Rattee*, 145 N.H. at 347.

One purpose for requiring rules is to "give persons fair warning as to what standards the agency will rely on when making a decision." *Boaz v. Bartholomew Consolidated School*, 654 N.E.2d 320, 323 (Ind. Tax 1995). In addition, rules serve to "eliminate any need to develop standards on a case by case basis, which is time-consuming; may lead to inconsistent results;

and severely inhibits judicial review." *Matter of Bessemer Mt.*, 856 P.2d 450, 454 (Wyo. 1993). Although one of the main purposes of adopting rules is to furnish notice to the public as to how a decision may be reached, so long as an individual is not prejudiced by the agency's failure to adopt rules, the agency's actions will not be overturned. *See Petition of Rattee*, 145 N.H. at 347 ("While we do not condone the lack of compliance with the administrative rulemaking process, we cannot conclude that the petitioner in this case was prejudiced.").

■ We must, therefore, determine whether the plaintiffs suffered harm as a result of the lack of rules. The plaintiffs argue they suffered injury because "[t]here is no guidance on what constitutes a privilege or concession [and] there is no guidance on how DRED should determine who or what entity should be granted a privilege or concession or under what conditions said privilege or concession should be granted." The plaintiffs do not explain, however, any specific way in which they were prejudiced as a result of the lack of guidance regarding DRED's standards for the granting of privileges and concessions. The plaintiffs do not assert that they were prejudiced because they lacked notice that Mt. Kearsarge had been designated as one of seventeen "communication sites." Nor do they assert that if DRED had followed proper rulemaking procedures, thereby allowing for public input into the rulemaking process, DRED would not have entered into the lease with U.S. Cellular. Rather, their only contention is that DRED lacked authority to enter into the lease agreement because it did not promulgate rules. *Cf. Appeal of Behavior Science Institute*, 121 N.H. at 934-35, 937 (requiring parties to reapply for certificate of need after determining that agency's failure to promulgate rules prejudiced competing applicants). As explained previously, DRED possessed authority to enter into the lease agreement and as the plaintiffs have not shown how they were prejudiced due to the absence of rules, DRED's actions were valid.

■ The plaintiffs next argue that DRED's policy governing the use and management of mountaintops for communication facilities is a *de facto* rule under the Administrative Procedure Act, RSA chapter 541-A (1997 & Supp. 2001). The plaintiffs contend that because the policy sets forth standards and requirements clearly intended to apply to public, quasi-public and private users, DRED was required to formally adopt rules governing what is covered in its policy.

RSA chapter 541-A "prescribes the procedure that agencies must follow if their rules are to have effect." *Petition of Pelletier*, 125 N.H. 565, 571

(1984) (quotations omitted). A "rule" is defined as "each regulation, standard, or other statement of general applicability adopted by an agency to (a) implement, interpret, or make specific a statute enforced or administered by such agency . . . ." RSA 541-A:1, XV. Even assuming the policy statement binds the public and is therefore a *de facto* substantive rule without effect, *see Petition of Pelletier*, 125 N.H. at 571, DRED still had statutory authority to enter into the lease agreement.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.