State Board of Education
No. 2010-161

APPEAL OF SCHOOL ADMINISTRATIVE UNIT #44
(New Hampshire State Board of Education)

Argued: March 17, 2011
Opinion Issued: May 26, 2011

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Edward M. Kaplan* and *Beth G. Catenza* on the brief, and *Mr. Kaplan* orally), for the petitioner.

*Bernstein Shur, P.A.*, of Manchester (*Andru H. Volinsky* and *Christopher G. Aslin* on the brief, and *Mr. Volinsky* orally), for the respondent.

*Theodore E. Comstock* and *Barrett M. Christina*, of Concord, by brief, for the New Hampshire School Boards Association, as *amicus curiae*.

DUGGAN, J. This case concerns the termination of the respondent, Judith McGann, as superintendent of the petitioner, School Administrative Unit #44 (SAU). The SAU seeks review of the State Board of Education's

decision that its failure to provide pre-hearing discovery with respect to its expert witness denied McGann a meaningful right to cross-examine that witness. McGann cross-appeals, alleging numerous violations of her procedural due process rights under both the State and Federal Constitutions. We affirm in part, reverse in part, and remand.

## I

The record supports the following facts. In 2004, following the resignation of the former superintendent, McGann was selected by the SAU to serve as interim superintendent. She subsequently entered into an employment contract with the SAU for the term of July 1, 2007, through June 30, 2009. On September 3, 2008, the SAU Board notified McGann of its intention to terminate her employment. The letter identified eight issues as the basis for her termination and informed her of her right to request a hearing before the SAU Board. On October 9, 2008, the SAU notified McGann of three additional grounds for termination that had been uncovered during the SAU's investigation.

The gist of the allegations was that McGann improperly used federal grant money in the form of stipend contracts to give raises to her staff, circumvented the SAU Board by granting the raises after it had denied her request for them, failed to ensure that "time and effort" requirements for the federal grants were followed, and intentionally failed to provide the SAU Board with an auditing company's management letter that raised significant concerns about accounting records and systems. McGann requested a public hearing before the SAU Board, which was held over three evenings for the evidentiary portion and an additional evening for deliberation. Both McGann and the SAU were permitted to call witnesses, present evidence, and cross-examine the other party's witnesses.

During the evidentiary portion of the hearing, the SAU called a forensic auditor, John Sullivan, whom it had hired to review its financial records. Following direct examination, McGann requested access to Sullivan's file. The SAU responded that it had never seen a file from Sullivan and thus did not have anything to turn over. The SAU further responded that it had informed McGann of exactly what Sullivan would testify about and that his direct testimony had conformed to these representations. The moderator hired to facilitate the hearing ruled that it was not within the province of the SAU Board "to engage in discovery orders" and declined to order the SAU to produce Sullivan's work file. On the second day of the hearing, McGann unsuccessfully renewed her request for access to Sullivan's file. Following the hearing, the SAU Board voted to terminate McGann.

McGann appealed to the State Board of Education, asserting that the SAU Board had violated her right to due process. In addition, she argued

that she was denied the opportunity to review Sullivan's work file and was thus denied a meaningful opportunity to cross-examine him. The State Board referred the appeal to a hearing officer, who ordered the SAU to produce Sullivan's work file for McGann to review. The hearing officer thereafter issued a proposed decision allowing McGann to supplement the record with items from Sullivan's file to demonstrate prejudice from being denied access to the file. The proposed decision ruled that the State Board of Education's administrative rules required the SAU to provide McGann with Sullivan's work file. The decision rejected McGann's remaining arguments and recommended that the State Board vacate and remand the SAU Board's decision for a new hearing. Both parties objected to the proposed decision, but the State Board adopted it in its entirety. This appeal and cross-appeal followed.

## II

We begin with the SAU's challenge to the State Board's discovery ruling. The State Board determined that by not turning over documents from the expert's file prior to the hearing before the SAU Board, the SAU violated its rules, particularly New Hampshire Administrative Rules, Ed 204.01(b)(4). In determining that the failure to turn over Sullivan's work file required a new hearing, the State Board found that the prejudice was "obvious."

We review the interpretation of administrative rules *de novo. Appeal of Murdock*, 156 N.H. 732, 735 (2008). "In construing rules, as in construing statutes, where possible, we ascribe the plain and ordinary meaning to the words used." *Id.* (quotation omitted). We consider the rule as a whole, and not in segments. *Id.* "While deference is accorded to an agency's interpretation of its regulations, that deference is not total. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve." *Id.* (quotation omitted).

Part 204 of the rules provides procedural requirements for certain actions by local school boards. It differentiates between "Proceedings at the School Board Level to Resolve Disputes Between Individuals and the School System," *see* N.H. ADMIN. RULES, Ed 204.01, and "Hearing Procedure For Teacher Nonrenewal," *see* N.H. ADMIN. RULES, Ed 204.02. Even though the State Board's order refers to Rule 204.02, because these proceedings did not involve a teacher nonrenewal, only the procedures in Rule 204.01 apply to this case.

Rule 204.01(b)(4) provides that "[t]he local board shall provide an opportunity for a hearing if requested at which the following procedures shall apply: . . . [d]uring the hearing, the school board shall allow a party,

or a designated representative of the party, to examine any and all witnesses." N.H. ADMIN. RULES, Ed 204.01(b)(4). The State Board determined that this rule required the SAU to provide access to Sullivan's work file in order to provide McGann with a "meaningful right to cross-examine" the expert witness.

■■ "We will not permit an agency to add or delete requirements through the mere expedient of interpreting a rule that is clear and unambiguous on its face." *Doe v. N.H. Dep't of Safety*, 160 N.H. 474, 477 (2010) (quotation, brackets, and ellipsis omitted). Here, the rule requires that the school board allow a party or a representative to examine any and all witnesses. The record shows that at the hearing, McGann extensively cross-examined the SAU's expert witness. While the State Board may have believed that access to Sullivan's file would have allowed for a more "meaningful" cross-examination, nothing in the administrative rules authorized the State Board to require the SAU to provide discovery to a party prior to an administrative hearing. Because an agency may not "add . . . requirements through the mere expedient of interpreting a rule that is clear and unambiguous on its face," *Doe*, 160 N.H. at 477 (quotation and brackets omitted), we reverse the State Board's ruling that pursuant to Rule 204.01(b)(4) the SAU was required to provide access to its expert's file.

### III

We next turn to McGann's arguments on cross-appeal. McGann argues that her federal and state constitutional rights to due process were violated because: (1) she was not provided with pre-hearing discovery of Sullivan's file; (2) the SAU Board terminated her based upon adverse findings that were substantially different from the grounds of which she had been given notice; (3) the SAU Board relied upon facts not in the record; and (4) she was not given an "opportunity to cure" prior to her termination. We first address McGann's claims under the State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 233 (1983). "This court is the final arbiter of the due process requirements of the State Constitution." *In re Father 2006-360*, 155 N.H. 93, 95 (2007) (quotation omitted).

### A

■ We begin with McGann's argument that due process required the SAU to provide access to Sullivan's file prior to the termination hearing. To determine whether particular procedures satisfy the requirements of due process, we typically employ a two-prong analysis. *Appeal of Town of Bethlehem*, 154 N.H. 314, 328 (2006). Initially, we ascertain whether a

legally protected interest has been implicated. *Id.; see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). We then determine whether the procedures provided afford adequate safeguards against a wrongful deprivation of the protected interest. *Appeal of Town of Bethlehem*, 154 N.H. at 328.

McGann argues that two legally protected interests are implicated here — a property interest in her continued employment and a liberty interest in her reputation as an educator and administrator. For the purpose of this appeal, we assume that McGann has a protected interest in her continued employment and in her reputation.

■ Our next task is to decide what process was due. In the context of this case, the principal reason for requiring procedural due process is to ensure that the facts upon which the SAU Board relied in terminating McGann were correctly determined, and that its decision was otherwise reasonable. *See Duffley v. N.H. Interschol. Ath. Assoc., Inc.*, 122 N.H. 484, 493 (1982). Our due process analysis requires a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*State v. Veale*, 158 N.H. 632, 639 (quotation omitted), *cert. denied*, 130 S. Ct. 748 (2009).

We briefly review the process afforded McGann under the State Board of Education's administrative rules. At the local school board level, proceedings that resolve disputes between individuals and the school system require a number of steps. The board must "[p]rovide an opportunity for a hearing when the legal rights, duties or privileges of a party are threatened"; "[p]rovide notice of such a hearing"; "[c]onduct a hearing in a manner assuring due process"; "[e]stablish an adequate record in all contested cases"; and "[i]ssue timely decisions and orders." N.H. ADMIN. RULES, Ed 204.01(a). At the hearing, formal rules of evidence are not applicable; the hearing must be either "public or nonpublic consistent with the provisions of the [Right-to-Know law]"; and during the hearing, the party, or a party's representative, must be allowed to "examine any and all witnesses." *Id.* 204.01(b)(3)-(4). The board must include a statement that it has complied with all of the requirements of the Right-to-Know law, including compliance with all the record-keeping requirements of the law.

*Id.* 204.01(c). The board must issue a written decision arrived at by a quorum of the board, which must include notice that the decision may be appealed to the state board. *Id.* 204.01(d). The decision must include a description of the issue in dispute, the board's decision, and the rationale for the board's decision. *Id.* 204.01(e). Finally, a party has the right to appeal a final decision of the board to the state board within thirty days of receipt of the written decision. *Id.* 204.01(g).

Even assuming that McGann's private interests in this case are substantial, given the elaborate process provided to her prior to termination, the risk of an erroneous deprivation of her right to continued employment and reputation is minimal. *See McBride v. Utah State Bar*, 242 P.3d 769, 777 (Utah 2010) (where petitioner made use of extensive grievance procedures available to him, there was a low risk of an erroneous deprivation). Under the Right-to-Know law, McGann was permitted access to all public records of the SAU Board and the administrative rules required the Board to certify that it had complied with all aspects of that law. *See* RSA ch. 91-A (2001 & Supp. 2010); N.H. ADMIN. RULES, Ed 204.01(c). McGann was given notice of the charges against her as well as a description of the evidence supporting each charge. She was given a full public hearing at which she was permitted to have counsel, call witnesses, and present evidence to answer the charges. She was also permitted to cross-examine all witnesses. All findings of fact, as well as the termination decision, had to be determined by a quorum of the SAU Board. Following the decision of the board, McGann had the right to appeal the decision to the State Board of Education and then to this court. While the decision adopted by the State Board found that the prejudice to McGann's case due to the lack of discovery was "obvious," a review of the record and McGann's brief fails to demonstrate any prejudice to McGann's case.

██ McGann argues that access to Sullivan's file would have revealed notes that indicated some of the SAU employees considered their stipends to be payment for performing extra work, rather than "bonuses" as Sullivan testified. However, McGann presented testimony from one such employee, Ann Wright, who disputed Sullivan's testimony regarding the stipends. McGann argues that this contradiction was weaker than direct impeachment with Sullivan's own notes. Due process, however, does not require the opportunity for perfect cross-examination. *Cf. State v. Watson*, 740 A.2d 832, 841 (Conn. 1999) ("Due process seeks to assure a defendant a fair trial, not a perfect one." (quotation omitted)). Wright's testimony minimized any prejudice caused by lack of access to these interview notes.

McGann also alleges prejudice because she did not have access to an unsigned memorandum prepared by William Tappan, the SAU's business

administrator. McGann argues that the memo would have allowed her to more effectively cross-examine Sullivan and Tappan. With regard to cross-examining Sullivan, we find no prejudice to McGann due to her lack of access to the memo. Nothing in the memo prepared by Tappan relates to the stipend funds about which Sullivan testified and McGann has failed to show how the memo would have afforded her a more effective cross-examination.

As for her cross-examination of Tappan, McGann fails to show how the memo would have afforded her a more effective cross-examination. Indeed, her argument centers almost entirely on the cross-examination of Sullivan and includes only a passing reference to Tappan. After reviewing the memo and the testimony of Tappan, we find no prejudice resulting from McGann's lack of access to the memo during the cross-examination of Tappan.

McGann also argues that her inability to examine Sullivan's file to determine which documents were not in the file prejudiced her case. She asserts that despite Sullivan's testimony that he interviewed Tappan and spoke extensively with the SAU's regular auditing firm, the work file contained no notes or records of any such communications. However, Sullivan's testimony included only passing references to these interviews, unrelated to his testimony regarding the stipend funds. Even if McGann had had access to his work file before the hearing, any impeachment value in the lack of interview notes was minimal at best and did not prejudice McGann's case before the SAU Board.

Finally, McGann argues that the lack of access to the documents resulted in a lack of an opportunity to conduct a meaningful cross-examination generally. The record does not support this argument. McGann was permitted to cross-examine all witnesses at length, and, in fact, the cross-examination of Sullivan was twice as long as the direct examination. The SAU Board did not limit McGann in either the length of the examination or the topics on which the witness could be examined. We find that McGann had an extensive opportunity to meaningfully cross-examine Sullivan.

■ As for the third prong of the due process analysis, we recognize that the government has a strong interest in the integrity and accuracy of administrative hearings, see *Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986) (describing government interest in preserving fairness in judicial proceedings), *aff'd by an equally divided court*, 484 U.S. 1 (1987), the government's interest in withholding the expert's file is low, and the burden of producing the file is minimal. Nonetheless, where, as here, a party has been provided with extensive procedural protections, and the value of the requested additional procedural safeguard is minimal, we

cannot say that due process required the SAU to provide McGann with pre-hearing access to Sullivan's file. After a thorough review of the record, we find that McGann received all the process that was due at her termination hearing. *Cf. Petition of Grimm*, 138 N.H. 42, 46 (1993) (due process requirements binding administrative procedures are quite different from those binding judicial procedures).

## B

█ McGann next argues that her due process rights were violated when the SAU Board voted to terminate her employment based upon four adverse findings that substantially differed from the grounds for termination stated in pre-hearing notices. "For more than a century, the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Petition of Kilton*, 156 N.H. 632, 638 (2007) (quotation omitted). "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Id.* (quotation omitted). "To satisfy due process, the notice must be of such nature as reasonably to convey the required information and must be more than a mere gesture." *Id.* (quotations and brackets omitted). "Due process, however, does not require perfect notice, but only notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 638-39 (quotation omitted). "Thus, our inquiry focuses upon whether notice was fair and reasonable under the particular facts and circumstances of each case." *Id.* at 639 (quotation omitted).

McGann contends that two of the SAU Board's adverse findings had not previously been disclosed to her and that two other adverse findings were materially changed from the notice she received prior to the hearing. We first address the adverse findings that McGann argues were not previously disclosed. The SAU Board's fifth adverse finding was that "Ms. McGann had a duty to inform the Board of the stipends being paid to various staff in the SAU and School Districts and breached that duty when she failed to inform the Board of stipends being paid to various staff in the SAU and school districts." The sixth adverse finding was that "Ms. McGann's payment of certain staff stipends from federal grant money . . . occurred without Board approval in contravention of Policy GDBA."

In the October 9, 2008 letter to McGann, the SAU identified the following reason for termination:

> c. Under her supervision, the SAU ignored the time and effort requirements for federal grants imposed by federal law.

Ms. McGann inappropriately used federal grant money to give so-called "raises" to her staff members after the SAU Board refused to grant the raises she requested for her staff. She achieved these "raises" through the use of stipend contracts. Under OMB Circular A-87, "[w]here employees work on multiple activities or cost objectives, a distribution of their salaries or wages will be supported by personnel activity reports or equivalent documentation." The independent auditors have uncovered numerous instances of SAU employees receiving stipends paid for with grant money who are not documenting their time spent on the grant projects and who are apparently doing grant work during their normal work day. The independent auditors have uncovered at least one example of where an employee received a stipend payment for a pay period during which the employee did not work. These failures to comply with federal law may subject the SAU to federal investigation and/or prosecution.

■ The notice provided to McGann clearly informed her of the allegation that she had circumvented the board and used federal grant money to give raises to her staff members after the board had refused to grant them. Policy GBDA is an SAU policy that requires any salary increase to be approved by the SAU Board. The notice further informed McGann that she was alleged to have used stipend contracts to give raises to her staff without SAU Board approval. This conduct is the same conduct that is the subject of the SAU Board's adverse findings five and six; to wit, that by circumventing the SAU Board, she failed to inform the Board and did not obtain Board approval of the raises. While the language of the adverse findings is not identical to the notice provided in the October 9, 2008 letter, due process does not require perfect notice, and McGann cannot credibly assert that she was unaware that her duty to inform and receive approval from the SAU Board would be an issue at her termination hearing.

We next address the two adverse findings that McGann asserts differed materially from those contained in the notice provided prior to the termination hearing. The SAU Board's first adverse finding was that, "Ms. McGann had a duty to cause the final Report on Internal Control over Financial Reporting dated December 20, 2007 *and* the information contained therein to be timely disclosed to the Northwood Board and breached that duty when she wrongfully withheld the final Report from the Northwood School District's Board." In the September 3, 2008 notice, the SAU informed McGann that her termination was based upon her "failure to provide [its] auditing company's management letter to the Northwood School District *or* to advise the Board of issues identified in the letter."

McGann makes much of the change from the word "or" in the notice letter to the word "and" in the adverse finding. The notice letter informed McGann that she neither provided the auditing company's management letter to the Northwood School District nor advised the Board of issues identified in the letter. The SAU Board's first adverse finding reflected the Board's determination that McGann failed to both provide the auditing letter to the school board and disclose to the Board the information contained therein. The notice provided in the September 3, 2008 letter advised McGann of the charges against her in sufficient detail to permit preparation of her defense at the termination hearing.

The SAU Board's seventh adverse finding was that, "Ms. McGann was responsible for ensuring that 'Time and Effort' reports justified the stipends paid to staff members for federal grant work, and failed in that duty." As we noted above, the October 9, 2008 letter notified McGann that "[u]nder her supervision, the SAU ignored the time and effort requirements for federal grants imposed by federal law." The notice provided to McGann informed her that the SAU Board uncovered instances of employees receiving stipends without documenting their time spent on grant projects and doing grant work during the normal work day. McGann was certainly aware that the SAU Board expected her to comply with the time and effort requirements as required by federal law. The notice provided in the October 9, 2008 letter was more than adequate and did not violate McGann's due process rights.

C

McGann next argues that the board erred when it failed to find that her due process rights were violated by "the SAU Board's reliance on extra-record facts." McGann asserts that "[d]uring the December 2, 2009 deliberative session, several SAU Board members made factual statements apparently based on their personal recollection of specific events; some of these statements were to facts not established on the record before the SAU Board." McGann argues that the lack of notice and opportunity to be heard on the veracity of these facts constitutes a violation of her due process rights. In support of this claim, McGann cites generally two portions of the minutes of the SAU Board's deliberative session. McGann does not cite any specific instances of SAU Board members making factual statements not supported by the record and we decline the invitation to review the deliberative session minutes and the hearing transcript in an attempt to uncover any such discrepancies in factual statements. *See In the Matter of Thayer and Thayer*, 146 N.H. 342, 347 (2001).

D

█ Finally, McGann argues that the SAU violated her due process rights by failing to provide her with "an opportunity to cure" the alleged grounds for her termination. She relies upon *Barrows v. Boles*, 141 N.H. 382, 389 (1996), for the proposition that "every agreement contains an implied covenant that each of the parties will deal in good faith and deal fairly with the other," and that "[f]air dealing may include giving the opposing party fair notice and an opportunity to cure any significant objections before being held liable." *Id.* (quotations omitted). This statement, drawn from the Uniform Commercial Code, *see* RSA 382-A:2-605(1)(a) (Supp. 2010), applies to commercial transactions, not employment contracts. *See* RSA 382-A:1-103 (Supp. 2010). Employees are free to bargain for a prior notice and opportunity to cure requirement in their contracts, *see Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 265-66 (7th Cir. 1997) (employment agreement provided a requirement for prior notice and an opportunity to cure if the employee was terminated for "unsatisfactory work"). Absent a specific provision in the employment contract, and absent citation of any authority supporting such a constitutional requirement in the context of employment contracts, we decline to hold that due process requires prior notice and an opportunity to cure before terminating an employment contract.

Because the Federal Constitution does not provide any greater protection than does the State Constitution with regard to McGann's due process claims, we reach the same result under the Federal Constitution. *See Veale*, 158 N.H. at 645.

IV

Having reversed the State Board's ruling that pursuant to Rule 204.01(b)(4) the SAU was required to provide access to its expert's file, we remand this case to the State Board for further proceedings consistent with this opinion.

> *Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.