Department of Safety
No. 2011-187

APPEAL OF ERICA BLIZZARD
(New Hampshire Department of Safety)

Argued: November 16, 2011
Opinion Issued: March 9, 2012

*Moir & Rabinowitz, PLLC*, of Concord (*James H. Moir* on the brief and orally), for the respondent.

*Michael A. Delaney*, attorney general (*Kevin H. O'Neill*, assistant attorney general, on the memorandum of law and orally), for the New Hampshire Department of Safety.

DALIANIS, C.J. The respondent, Erica Blizzard, appeals a decision of the New Hampshire Department of Safety (DOS) suspending her privilege to operate a boat for three years. *See* RSA 270-E:17 (2010). We affirm.

The following facts are drawn from the record. In the early hours of the morning on June 15, 2008, the respondent, carrying two passengers, was piloting a motorboat on Lake Winnipesaukee. There was almost no visibility due to dark and inclement weather conditions. As the respondent later told investigators, she was unable to see the bow of her boat. She was operating the boat at eighteen to twenty miles per hour, unsure of her location and checking her depth gauges, when the boat collided with an island. The collision killed one passenger and seriously injured the respondent and the second passenger. As a result of the collision, the respondent was charged with boating while intoxicated and negligent homicide. A jury found her guilty of negligent homicide, but not guilty of boating while intoxicated.

Thereafter, DOS sought to suspend the respondent's privilege to operate a boat pursuant to RSA 270-E:17, which authorizes DOS to revoke or suspend operating privileges for any violation of RSA chapters 270, 270-A, 270-B or 270-E. A hearing was held, and the hearing examiner found that the respondent had violated RSA 270:29-a (2010), which makes it a misdemeanor to "operate a power boat upon any waters of the state in a careless and negligent manner or so that the lives and safety of the public are endangered." As a result, the hearing examiner suspended the respondent's privilege to operate a boat for three years.

After DOS denied the respondent's motion for rehearing, she appealed pursuant to RSA 541:6 (2007). *See* RSA 21-P:13, II (2000) ("Unless otherwise provided by law, all . . . appeals [from DOS hearings] shall be held in accordance with RSA [chapter] 541."). The respondent's appeal raises the following issues: (1) whether DOS lacks authority to suspend boat-operation privileges because it has failed to promulgate associated regulations; (2) whether RSA 270-E:17 delegates legislative authority in violation of Part I, Article 37 of the State Constitution; and (3) whether the hearing notice complied with Part I, Article 15 of the State Constitution.

Our standard for reviewing agency decisions is set forth by statute: such decisions "shall not be set aside or vacated except for errors of law, unless [we are] satisfied, by a clear preponderance of the evidence before [us], that

such order is unjust or unreasonable." RSA 541:13 (2007). We address the issues raised by the respondent's appeal in turn.

*I. Failure to Adopt Regulations*

The respondent argues that DOS was required to promulgate regulations relative to the administration of RSA chapter 270-E and, because DOS failed to do so, it lacked authority to suspend her operating privileges. *See* RSA 270-E:12, XII (2010) (requiring DOS to adopt rules relative to "matters related to the administration of [RSA chapter 270-E]"). Although DOS has procedural rules governing revocation hearings, it has never adopted specific, substantive rules governing the suspension and revocation of boat-operating privileges. *See* N.H. ADMIN. RULES, Saf-C ch. 200. It argues that such rules are unnecessary for it to exercise suspension and revocation authority pursuant to RSA 270-E:17.

We have consistently held that "promulgation of a rule pursuant to the [Administrative Procedure Act] . . . is not necessary to carry out what a statute demands on its face." *Nevins v. N.H. Dep't of Resources and Economic Dev.*, 147 N.H. 484, 487 (2002). Thus, although we have occasionally noted that an agency "should . . . adopt rules," *Appeal of Behavior Science Institute*, 121 N.H. 928, 935 (1981), or even that it "was required to promulgate rules," *Nevins*, 147 N.H. at 487, it has been nearly a century since we last held that failure to adopt rules, by itself, divested a regulatory body of its authority. *See Hanover Precinct v. Atkins*, 78 N.H. 308, 310-11 (1916). Our modern cases focus upon whether the result of the agency's failure to adopt rules "was both unfair and inconsistent with [the statute granting authority]." *Appeal of Behavior Science Institute*, 121 N.H. at 935 (emphasis added). Therefore, when considering whether an agency's failure to adopt rules requires that its decision be overturned, we must first examine whether the statute is "sufficiently detailed to effectuate its purpose" without agency regulations. *Nevins*, 147 N.H. at 487. If the statute lacks sufficient detail on its face, then an agency must adopt rules supplying the necessary detail. *See id.* Next, we determine whether the result was unfair by examining whether the complaining party "suffered harm as a result of the lack of [required] rules." *Id.* at 488.

In this case, we assume without deciding that RSA 270-E:17 lacks sufficient detail to effectuate its purpose, but uphold the respondent's suspension because she does not argue that the lack of rules harmed her. The respondent has facially attacked RSA 270-E:17 under multiple theories, but has never argued that she suffered prejudice. She does not assert that she lacked notice that her behavior could result in suspension of her operating privilege. Nor does she argue that if DOS had promulgated

regulations, it would not have imposed the suspension. Without some argument that harm resulted, the absence of regulations does not, in itself, require us to overturn DOS's suspension decision. *See id.*

█ The respondent also contends that, without additional rules, RSA 270-E:17 violates her due process rights under Part I, Article 15 of the State Constitution. To the extent the respondent claims the statute is unconstitutionally vague on its face, we reject her argument. When a vagueness claim does not involve a fundamental right, a facial attack on the challenged statutory scheme is unwarranted, and the respondent does not argue that the privilege to operate a boat is a fundamental right. *State v. MacElman*, 154 N.H. 304, 307 (2006).

*II. Delegation*

We next address whether RSA 270-E:17 unconstitutionally delegates legislative authority. The constitutionality of a statute is a question of law, which we review *de novo. N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 714 (2007). In reviewing a statute, we presume it to be constitutional and we will not declare it invalid except upon inescapable grounds. *Id.* Because the respondent argues under the State Constitution only, we base our· decision upon it alone, and refer to federal law merely to aid in our analysis. *See id.* at 715. When interpreting a statute, "[w]e ... examin[e] the plain language of the statute using the ordinary meanings of the words to determine legislative intent." *N.H. Dep't of Resources and Economic Dev. v. Dow*, 148 N.H. 60, 63 (2002). The relevant section of RSA 270-E:17 provides:

> In addition to any other authority provided by law, the commissioner is hereby authorized to revoke or suspend any registration issued pursuant to this chapter or any privilege to operate a boat, or both, upon a showing that:
>
> I. The owner has violated any provision of this chapter, RSA 270, RSA 270-A, RSA 270-B, or any rules adopted under these chapters, or has allowed another person to violate any of these laws or rules.

█ The respondent first contends that RSA 270-E:17 violates Part I, Article 37 of the State Constitution because it impermissibly delegates legislative authority to DOS. Under the separation of powers article of the New Hampshire Constitution, the General Court may not create and delegate duties to an administrative agency if its commands are in such broad terms as to leave the agency with unguided and unrestricted

discretion in the assigned field of its activity. *Id.* Thus, we have ruled unconstitutional statutes that lack either a declared policy or a prescribed standard. *Id.* To avoid the charge of unlawfully delegated legislative power, a statute must lay down basic standards and a reasonably definite policy for the administration of the law. *Id.*

For example, in *Marino*, a statute delegated authority to the New Hampshire Department of Environmental Services to impose construction conditions that, "in the opinion of the commissioner, more nearly meet the intent of [RSA chapter 483-B, the Comprehensive Shoreland Protection Act], while still accommodating [a property owner's] rights." RSA 483-B:10, I (2001) (amended 2011). We held that the statute complied with the separation of powers article because it impliedly incorporated the basic standards set forth in RSA 483-B:9 and reasonably definite policies set forth in RSA 483-B:1 and :2. *Marino*, 155 N.H. at 716.

█ In this case, mindful of our obligation to construe statutes to comport with constitutional requirements when possible, *see In re Guardianship of Reena D.*, 163 N.H. 107, 114 (2011), we construe RSA 270-E:17 to incorporate, by implication, the standards and policies in RSA chapters 270, 270-A, 270-B and 270-E because the statute limits DOS's suspension power to individuals who violate a provision contained in those chapters. Thus, to determine whether RSA 270-E:17 unlawfully delegates legislative authority, we examine whether the policies and standards in the incorporated chapters render the statute constitutional.

█ Turning first to the "reasonably definite policy" requirement, the legislature has set forth, in detail, the policies underlying RSA chapter 270, which include: (1) maintaining "public safety," RSA 270:1, I (2010); (2) "protection of property," *id.*; (3) "maintaining the residential, recreational and scenic values which New Hampshire public waters provide," RSA 270:1, II (2010); (4) "maintain[ing] . . . safe and mutual enjoyment of a variety of uses," *id.*; (5) "promotion of our tourist industry," *id.*; (6) "protection of environment and water quality," *id.*; and (7) "nutur[ing] of . . . threatened and endangered species," *id.* We hold that these policies are reasonably definite, and, therefore, satisfy the policy requirement for legislative delegations of authority.

█ As to "basic standards," the impliedly incorporated chapters specifically define dozens of distinct violations that potentially trigger suspension of operating privileges. These standards are more than basic — they specifically address most aspects of water recreation. In particular, the statute upon which DOS relied when suspending the respondent's operating privilege, RSA 270:29-a, lays down an adequate standard for "[c]areless

and [n]egligent [o]peration of [power] [b]oats," which it defines as "operat[ing] a power boat upon any waters of the state in a careless and negligent manner or so that the lives and safety of the public are endangered." These standards, when combined with the reasonably definite policies in RSA 270:1, avoid an unlawful delegation of legislative power.

The respondent contends, however, that the statute is an unconstitutional delegation of authority because "it is glaringly lacking any legislative statement as to the length of revocation authorized." To support her position, she relies upon *Guillou v. State*, 127 N.H. 579, 581 (1986), in which we held that a statute permitting the director of DOS to suspend drivers' licenses "for any cause which he may deem sufficient" was an unconstitutional delegation of legislative authority. (Quotation omitted.)

Although *Guillou*, 127 N.H. at 581, mentioned the lack of statutory guidance as to suspension length, this lack of guidance was not, by itself, dispositive. Indeed, *dicta* in the case suggest that the lack of guidance as to suspension duration was not even relevant to our decision. *Guillou*, 127 N.H. at 582-83. After concluding that the statute under review unconstitutionally delegated authority, we gave examples of three revocation statutes that are apparently constitutional. *Id.* Like RSA 270-E:17, all of these statutes give regulatory authorities the power to suspend or revoke licenses for specific infractions, but no specific guidelines as to suspension lengths. *See* RSA 178:11 (1977) (amended 1987; recodified as RSA 179:57, *see* Laws 1990, 255:1); RSA 311-B:11 (1984) (amended 1987, 2010); RSA 361-A:3 (1984) (amended 1995, 1997, 2003, 2004, 2005, 2009).

*Guillou*, 127 N.H. at 582-83, did not explain why these statutes constitutionally delegated authority notwithstanding their lack of guidance as to suspension duration, but cases addressing this issue in the context of the Federal Constitution's separation of powers doctrine are in accord. For example, in *Walberg v. United States*, 763 F.2d 143, 147-48 (2d Cir. 1985), the Second Circuit upheld a statute empowering courts to impose special parole even though the controlling statute failed to specify the maximum period that such parole could be imposed. The Second Circuit construed the statute to allow courts to place defendants on special parole for life and held that "[s]ince the explicit provision for punishment with a range of years up to the length of the defendant's life does not constitute an unconstitutional delegation of power, we conclude that Congress's implicit authorization of such a range for special parole is not constitutionally infirm." *Id.* at 149.

■ Moreover, legislation giving agencies suspension discretion, but lacking specific provisions as to length, satisfy constitutional standards when articulated factors limit agency discretion. Thus, in *Arrow Distilleries v. Alexander*, 109 F.2d 397, 402 (7th Cir. 1940), the Seventh Circuit

upheld delegation of the power to suspend alcohol manufacturing permits if the permit holder had "wilfully violated any of the conditions [of the permit]." (Quotation omitted.) Although the statute lacked provisions as to suspension duration, the court concluded that it complied with constitutional requirements, noting the presence of three articulated factors: (1) "[t]he offense for which suspension [could] be imposed [wa]s clearly designated and only the length . . . of suspension [wa]s left to the discretion of the [agency]"; (2) "the section [had to] be construed to require the . . . exercise [of] sound discretion"; and (3) there was an avenue for judicial review of suspension lengths to ensure their reasonableness. *Arrow Distilleries*, 109 F.2d at 402. Accordingly, the court held that the delegation of authority did not violate the Federal Constitution's separation of powers doctrine. *Id.*

These cases are compatible with both *Guillou's dicta* and the rule under Part I, Article 37 of the State Constitution that delegations of authority require only "reasonably definite policies" and "basic standards." We, therefore, adopt their reasoning and apply it here. Applying *Walberg*, 763 F.2d at 149, we construe the lack of a maximum suspension length in RSA 270-E:17 to grant DOS the discretion to suspend operating privileges for life when circumstances indicate such is warranted. Legislative delegation of this discretion to DOS satisfies constitutional standards because the factors discussed in *Arrow Distilleries* limit DOS's discretion. RSA 270-E:17 specifically defines the conduct that triggers a revocation or suspension as violation of any provision of RSA chapters 270, 270-A, 270-B or 270-E. Additionally, we construe the statute to require that DOS exercise sound discretion in revoking or suspending operating privileges by adhering to the incorporated policies discussed above. Finally, DOS's decisions as to revocation or suspension length are subject to judicial review for unreasonableness pursuant to RSA 21-P:13, II and RSA 541:6. As a result, RSA 270-E:17 constitutionally delegates legislative authority notwithstanding its lack of specific provisions relating to time limits.

We note, however, that the absence of rules makes our task on appeal more difficult. In a case closer than this one, in which a party argues that a DOS suspension was unjust or unreasonable, or contends that the absence of rules caused harm or prejudice, the lack of rules might prove dispositive. Adoption of rules could eliminate this risk. Therefore, to the extent practicable, DOS should promptly adopt rules relative to the administration of RSA 270-E:17. *See* RSA 270-E:12, XII.

In a final delegation of authority argument, the respondent contends that, because DOS can suspend the privilege to operate a boat more easily than it can suspend a license to drive an automobile, the boating privilege

revocation scheme is an unconstitutional delegation. We reject this argument because the driver's license suspension statutes are not implicated by the constitutional standards for permissible legislative delegation, which, as we have explained, RSA 270-E:17 satisfies.

*III. Notice*

 The respondent argues that the notice of hearing she received was inadequate under the State Constitution's Due Process Clause. *See* N.H. CONST. pt. I, art. 15. The notice provided in relevant part:

> YOU ARE ORDERED TO APPEAR FOR A HEARING BASED UPON A COMPLAINT . . . WHICH ALLEGES THAT YOU WERE THE OPERATOR OF A BOAT OR VESSEL, [on June 15, 2008], ON LAKE WINNIPESAUKEE, GILFORD, NEW HAMPSHIRE; AND, THAT YOU DID OPERATE IN A RECKLESS DISREGARD FOR THE/SAFETY OF THE PUBLIC ON THE STATE'S WATERS. THEREFORE, THE STATE OF NEW HAMPSHIRE HAS JUST CAUSE TO REVOKE YOUR SAFE BOATER EDUCATION CERTIFICATE. JUST CAUSE FOR THE PURPOSES OF THE HEARING SHALL INCLUDE, BUT NOT BE LIMITED TO
>
> > (1) CONVICTION OF BOATING WHILE INTOXICATED; OR
> >
> > (2) CONVICTION OF ANY ACT THAT INDICATES A RECKLESS DISREGARD FOR THE SAFETY OF THE PUBLIC ON THE STATE'S WATERS.
>
> FOR THE PURPOSES OF SAF-C 6107.03, (d), THE SCOPE OF THE HEARING SHALL BE LIMITED TO:
>
> > (1) A REVIEW OF THE COURT ABSTRACT;
> >
> > (2) WHETHER THE INDIVIDUAL HAS BEEN BOATING TO ENDANGER THE PUBLIC; AND
> >
> > (3) WHETHER THE INDIVIDUAL IS THE NAMED PERSON ON THE COURT ABSTRACT OR COMPLAINT
>
> FOR THE PURPOSES OF RSA 270-E:17[], THE SCOPE OF THE HEARING SHALL BE LIMITED TO:
>
> [No limitation followed.]

For more than a century, the central meaning of procedural due process has been clear: Parties whose rights may be affected are entitled to be

heard, and in order that they may enjoy that right, they must first be so notified. *Appeal of Sch. Admin. Unit #44*, 162 N.H. 79, 87 (2011). The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. *Id.* To satisfy due process, the notice must be of such nature as reasonably to convey the required information and must be more than a mere gesture. *Id.* Due process, however, does not require perfect notice, but only notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id.* Thus, our inquiry focuses upon whether notice was fair and reasonable under the particular facts and circumstances of the case. *Id.*

The respondent emphasizes the absence of specific scope-of-hearing limitations in the portion of the notice addressing RSA 270-E:17. We conclude, however, that read as a whole, the notice she received was fair and reasonable. DOS's notice informed the respondent of the specific date, location and nature of the conduct that the hearing would address, *i.e.*, reckless operation of a boat in Gilford on June 15, 2008. Contrary to her argument, it informed her that the legal authority for revoking her operating privilege was RSA 270-E:17. The notice enabled the respondent to present objections both before and during the hearing. Indeed, her arguments to the hearing examiner evinced a thorough understanding of the facts and legal issues involved. Moreover, the hearing addressed only that conduct to which the notice specifically referred.

Furthermore, although the notice failed to cite RSA 270:29-a, the negligent boating statute upon which DOS ultimately relied to suspend the respondent's operating privilege, the notice adequately informed her of the facts and legal standards involved. The notice alleged that the respondent operated a boat "in a reckless disregard for the safety of the public." (Capitalization omitted.) This allegation combined with the notice's citation of RSA 270-E:17 adequately apprised the respondent that DOS sought to revoke her boat-operating privilege for violating a statute in RSA chapter 270, 270-A, 270-B or 270-E that related to reckless operation and risks to public safety. The only provision in the listed chapters that fits this description is RSA 270:29-a, which prohibits operating "a power boat . . . so that the lives and safety of the public are endangered." Because the hearing examiner relied exclusively upon this provision when he suspended the respondent's operating privilege, the notice, read as a whole, adequately informed the respondent of the statutory provision at issue. As a result, the notice was fair and reasonable under the circumstances and complied with Part I, Article 15 of the State Constitution. *See id.*

Finally, the respondent argues that the notice lacked certain elements required by RSA 541-A:31 (2007). We do not address this argument, however, because she has failed to demonstrate that she preserved it for our review. *See In the Matter of Sukerman & Sukerman*, 159 N.H. 565, 566 (2009).

*Affirmed.*

HICKS, CONBOY and LYNN, JJ., concurred.